IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAUL BARON, on behalf of himself  \*
and others similarly situated,

    Plaintiff,                                      \*

    v.                                           \*                 **CIVIL NO. JKB-19-1255**

SPRINT CORPORATION,                 \*

    Defendant.                              \*

       \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

TYLER MORRISON, on behalf of      \*
himself and others similarly
situated,

    Plaintiff,                                      \*

    v.                                           \*                 **CIVIL NO. JKB-19-1257**

AT&T MOBILITY LLC,                  \*

    Defendant.                              \*

       \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

MICHELLE MORRISON, on her
own behalf and on behalf of all      \*
others similarly situated,

    Plaintiff,                                      \*

    v.                                           \*                 **CIVIL NO. JKB-19-1298**

VERIZON COMMUNICATIONS
INC. and CELLCO                          \*
PARTNERSHIP d/b/a VERIZON
WIRELESS,

    Defendants.                            \*

```
*   *   *   *   *   *   *   *   *   *   *   *
```

| | | |
|---|---|---|
| SHAWNAY RAY AND KANTICE JOYNER, on their own behalf and on behalf of all others similarly situated, | * | |
| Plaintiffs, | * | |
| v. | * | CIVIL NO. JKB-19-1299 |
| T-MOBILE US, INC., | * | |
| Defendant. | * | |

```
*   *   *   *   *   *   *   *   *   *   *   *
```

## MEMORANDUM

In April and May of 2019, four putative class actions were filed against each of the major mobile carriers in the United States: AT&T (*Morrison v. AT&T Mobility, LLC*, Civ. No. JKB-19-1257), Sprint (*Baron v. Sprint Corporation*, Civ. No. JKB-19-1255), T-Mobile (*Ray, et al. v. T-Mobile US, Inc.*, Civ. No. JKB-19-1299), and Verizon (*Morrison v. Verizon Communications Inc. et al.*, Civ. No. JKB-19-1298). Each complaint alleges that the mobile carriers illegally sold users' geolocation data to third parties in violation of the Federal Communications Act. (AT&T Compl., ECF No. 1; Sprint Compl., ECF No. 1; T-Mobile Compl., ECF No. 1; Verizon Compl., ECF No. 1.)

In all four cases, the mobile carriers ("Defendants") have filed Motions to Compel Arbitration, citing the arbitration provisions contained in each plaintiff's contract with their respective mobile carrier. (AT&T Mot. Compel, ECF No. 7; Sprint Mot. Compel, ECF No. 11; T-Mobile Mot. Compel, ECF No. 12; Verizon Mot. Compel, ECF No. 11.) The plaintiffs in each

2

case ("Plaintiffs") contend that the arbitration clauses are unenforceable because they are unconscionable under Maryland state law. (AT&T Opp'n Mem. 4–10, ECF No. 11; Sprint Opp'n Mem. 4–11, ECF No. 16; T-Mobile Opp'n Mem. 3–7, ECF No. 20; Verizon Opp'n Mem. 4–10, ECF No. 12.)

Because the arbitrability of each dispute involves the same legal analysis, the Court addresses these motions in one memorandum. The motions have been fully briefed. No hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, the Court will grant each Defendant's Motion to Compel Arbitration.

## *I. Legal Standard*

The Federal Arbitration Act ("FAA") stipulates that, in any contract involving interstate commerce, a provision through which the parties agree to arbitrate their disputes shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act "reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

"Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002). "[G]enerally applicable state contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [the FAA]." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). However, state law defenses must not be applied "in a fashion that disfavors arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011),

3

and they must not "rely on the uniqueness of an agreement to arbitrate" to invalidate it, *id.* (quoting *Perry v. Thomas*, 482 U.S. 483, 493 (1987)).

To establish that a provision is unconscionable under Maryland law, a plaintiff must show the provision at issue is both procedurally and substantively unconscionable. *Holloman v. Circuit City Stores, Inc.*, 894 A.2d 547, 560 (Md. 2006). Procedural unconscionability is "characterized by extreme unfairness, which is made evident by (1) one party's lack of meaningful choice, and (2) contractual terms that unreasonably favor the other party." *Walther v. Sovereign Bank*, 872 A.2d 735, 743 (Md. 2005) (internal quotations and citations omitted). Substantive unconscionability involves terms that are "'unreasonably favorable to the more powerful party,' 'impair the integrity of the bargaining process or otherwise contravene the public interest or public policy,' 'attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law,' or are otherwise 'unreasonably and unexpectedly harsh.'" *Freedman v. Comcast Corp.*, 988 A.2d 68, 85–86 (Md. Ct. Spec. App. 2010) (quoting *Walther*, 872 A.2d at 744).

## II. Analysis

### A. The Enforceability of the Arbitration Clauses

Plaintiffs contend that each of the arbitration clauses in dispute is not enforceable because they are procedurally and substantively unconscionable under Maryland law. (AT&T Opp'n Mem. at 4–10; Sprint Opp'n Mem. at 4–11; T-Mobile Opp'n Mem. at 3–7; Verizon Opp'n Mem. at 4–10.) The arbitration provisions are procedurally unconscionable, Plaintiffs argue, because they are contained in contracts that are excessively long and customers do not have a meaningful choice as to whether to accept them. (AT&T Opp'n Mem. at 5–8; Sprint Opp'n Mem. at 5–8; T-Mobile Opp'n Mem. at 3–5; Verizon Opp'n Mem. at 4–8.) The arbitration clauses are substantively unconscionable, according to Plaintiffs, because arbitration in these circumstances

4

would make it impossible for all of the potential plaintiffs to recover, and arbitration would allow Defendants to get away with egregious misconduct without public scrutiny. (AT&T Opp'n Mem. at 8–10; Sprint Opp'n Mem. at 8–11; T-Mobile Opp'n Mem. at 5–7; Verizon Opp'n Mem. at 8–10.)

The Court need not address whether the arbitration provisions are procedurally unconscionable, as Plaintiffs' substantive unconscionability arguments fail as a matter of law. Both the United States Supreme Court and the United States Court of Appeals for the Fourth Circuit have held that courts cannot invalidate arbitration clauses on a theory that features inherent to arbitration are unconscionable. *See Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426–27 (2017) (courts may not "adopt a legal rule hinging on the primary characteristic[s] of an arbitration agreement" to invalidate an arbitration clause); *see also Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 180 (4th Cir. 2013) ("[T]he generally applicable contract defense of unconscionability may not be applied in a manner that targets the existence of an agreement to arbitrate as the basis for invalidating that agreement.") But this is precisely what Plaintiffs attempt to do here. In emphasizing the private nature of arbitration (and the accompanying lack of public scrutiny over arbitral disputes), as well as the individual approach typically used in arbitration (and the accompanying challenges this creates for large numbers of plaintiffs to recover), Plaintiffs seek to use two of arbitration's "primary characteristic[s]" as a basis for invalidating the arbitration clauses. *See Kindred*, 137 S. Ct. at 1427. This approach runs headlong into the binding precedent that expressly rejects such an approach.

Plaintiffs' emphasis on the troubling nature of Defendants' alleged misconduct also fails to provide a legally cognizable basis for invaliding the arbitration clauses. Even if Defendants did engage in egregious conduct, courts must avoid considering the merits of a claim in deciding

whether a dispute is arbitrable. *See Noohi v. Toll Bros.*, 708 F.3d 599, 607 (4th Cir. 2013) ("[W]here it is asserted that a dispute is bound to arbitration, the role of courts is limited to determining the enforceability of an arbitration provision; straying into [the merits of a dispute] . . . is an impermissible encroachment on the arbitrator's authority." (internal quotation omitted)).

Plaintiffs' allegations about Defendants' conduct, if true, are indeed troubling. And the concerns Plaintiffs raise about the ability of consumers to recover in an era of widespread arbitration are well documented. *See e.g.*, J. Maria Glover, *Disappearing Claims and the Erosion of Substantive Law*, 124 Yale L.J. 3052 (2015). But courts are prohibited from treating arbitration "as an inferior or less reliable means of vindicating important substantive rights." *Adkins*, 303 F.3d at 502. And Plaintiffs have offered no legal justifications for departing from this well-established precedent.

### B. The Scope of the Arbitration Clauses

Plaintiffs next contend that even if the arbitration provisions are enforceable, two of the plaintiffs—Tyler Morrison, who is an AT&T customer, and Michelle Morrison, who is a Verizon customer (collectively, "the Morrisons")—are not bound by the provisions because these plaintiffs did not initially sign the contracts containing the arbitration clauses. (AT&T Opp'n Mem. at 11–13; Verizon Opp'n Mem. at 10–12.) Instead, these two plaintiffs were authorized users on accounts held by other family members, who were the original signatories on the respective contracts. (AT&T McCarthy Decl. ¶ 5, ECF No. 7-2; Verizon Oyekoya Decl. ¶ 5, ECF No. 11-2.)

The Morrisons do not deny that the plain language of AT&T and Verizon's contracts provides that disputes involving authorized users are arbitrable, even if those users did not personally sign the contracts.[1] Rather, the Morrisons appear to argue that, as a matter of law, an

---

[1] Specifically, AT&T's contract provides that the contract covers the account holder as well as "all authorized or unauthorized users or beneficiaries of services" provided "under this or prior Agreements." (AT&T Ex. 1 of

6

individual who does not personally sign a contract cannot be bound by an arbitration provision contained in that contract. (AT&T Opp'n Mem. at 11–13; Verizon Opp'n Mem. at 10–12.) This misstates the law. In the Fourth Circuit, "a party can agree to submit to arbitration by means other than personally signing a contract containing an arbitration clause." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000). Specifically, a nonsignatory is estopped from refusing to comply with an arbitration clause where he asserts a claim that "either literally or obliquely, assert[s] a breach of a duty created by the contract containing the arbitration clause." *Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 629 (4th Cir. 2006).

Here, the Morrisons bring statutory claims under the Federal Communications Act ("FCA"), but these statutory claims "obliquely . . . assert a breach of a duty created by the contract[s] containing the arbitration clause[s]." *See id.* Specifically, the Morrisons assert that they were AT&T and Verizon customers—as evidenced by their contracts—and AT&T and Verizon violated the FCA by breaking the promises contained in these contracts that they would not sell users' geolocation data to third parties. (AT&T Compl. ¶¶ 77–88; Verizon Compl. ¶¶ 59–70.) In short, the Morrisons' FCA claims hinge on the existence and terms of the very contracts containing the arbitration provisions.[2] Where that is the case, a court must enforce the arbitration provision at issue, as a plaintiff should not be allowed to "rely on [a] contract when it works to its advantage, and repudiate it when it works to its disadvantage." *See Wachovia Bank, Nat. Ass'n v. Schmidt*, 445 F.3d 762, 769 (4th Cir. 2006) (citation omitted); *see also Lomax v. Weinstock,*

---

Richard Rives Decl. at 12, ECF No. 7-9.) Verizon's contract provides that "[t]his agreement also applies to anyone who uses [the account holder's] Service." (Verizon Ex. E. at 2, ECF No. 11-7.)

[2] Verizon's commitment not to sell users' location data to third parties was technically made in its Privacy Policy, which was incorporated by reference into the Customer Agreement that contained the arbitration provision. (Verizon Oyekoya Decl. ¶ 3.)

*Friedman & Friedman, P.A.*, 583 F. App'x 100, 101 (4th Cir. 2014) (compelling arbitration even though plaintiff's claims were statutory because ultimately his claims "relie[d] on" the underlying sales contracts containing the arbitration provisions).[3]

### III. Conclusion

For the foregoing reasons, Orders shall enter granting each Defendant's Motion to Compel Arbitration and staying the proceedings pending arbitration of the disputes.

DATED this 23 day of October, 2019.

BY THE COURT:

/s/ James K. Bredar

James K. Bredar
Chief Judge

---

[3] In light of the Court's conclusion here, it need not address the parties' arguments as to whether the Morrisons are bound by the arbitration clauses as third-party beneficiaries under Maryland law. (AT&T Opp'n Mem. at 13.) Similarly, it need not address whether the documents Michelle Morrison signed in February 2017 and December 2018 were sufficient to bind her to arbitration. (Verizon Mot. Compel at 2–5.)

8